UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

U.S. SPECIALTY INSURANCE CO.,

                             Plaintiff,

        -v-

MASSACHUSETTS BAY INSURANCE CO. *and*
HANOVER INSURANCE CO.,

                        Defendants.

21 Civ. 10590 (PAE)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

      In this action, three insurers dispute which has responsibility to cover defense costs in a negligence lawsuit pending in state court.  Each insurer's policy covers, among others, two construction industry entities that are defendants in the lawsuit.  The insurer that to date has led the entities' defense, plaintiff U.S. Specialty Insurance Co. ("U.S. Specialty"), here seeks contribution from the entities' other insurers, defendants Massachusetts Bay Insurance Co. ("Massachusetts Bay") and Hanover Insurance Co. ("Hanover").  It also seeks a declaratory judgment establishing its right to the same.

      Pending now is U.S. Specialty's motion for partial summary judgment against Massachusetts Bay.  The motion presents two questions:  First, is Massachusetts Bay obliged to defend the two entities in the state court action?  Second, if so, how should defense costs be allocated between Massachusetts Bay and U.S. Specialty?

      For the reasons that follow, the Court holds that the underlying state court lawsuit triggers Massachusetts Bay's duty to defend.  Pending additional briefing, however, the Court declines to determine the allocation of defense costs.  The Court thus grants in part, and denies in part without prejudice, U.S. Specialty's motion for partial summary judgment.

I.      **Background**[1]

A.      **Facts**

1.      **The Parties and the Project**

The relevant parties at the construction site can be summarized by role as follows.  The Court, for ease of reference, uses this shorthand to refer to these parties thereafter:

- <u>Owner</u> (STB Housing Development Corp. and STB Owners, LLC).  Owner is the developer of an affordable housing project in Bronx, New York.  JSF ¶ 10.

- <u>General Contractor</u> (Chatsworth Builders LLC and its parent company, L&M Builders Group).  In June 2016, Owner hired General Contractor to manage construction of the project.  *Id.* ¶ 20; *see also* JSF, Ex. 7 at 5.

- <u>Hardware Supplier</u> (Weinstein & Holtzman of New York, LLC).  In December 2016, General Contractor hired Hardware Supplier to furnish "hollow metal, hardware, and doors" to the project over the coming years.  *Id.*, Ex. 9 at 2.

- <u>Door Manufacturer</u> (J&O Doors Sales).  In September 2018, Hardware Supplier ordered several hundred doors for the project from Door Manufacturer.  *Id.*, Ex. 11 at 2–13.

- <u>Trucking Company</u> (MTA Logistics, Inc.).  In November 2018, Door Manufacturer hired Trucking Company to deliver the ordered doors to the building site.  Kallhovd Decl., Ex. 3 at 6.

---

[1] The facts cited herein are taken from the parties' submissions on the instant motions—specifically, their joint stipulation of material facts (and accompanying exhibits), Dkt. 44 ("JSF"); and Kallhovd's declaration (and accompanying exhibits), Dkt 49 ("Kallhovd Decl."). The Court also refers to the insurance policies at issue, attached as exhibits to the complaint, *see* Dkt. 4, Ex. 3 ("Massachusetts Bay Policy"); Dkt. 4, Ex. 4 ("U.S. Specialty Policy").

- <u>Construction Company</u> (B&V Contracting Enterprises, Inc.).  Construction Company's laborers unloaded doors delivered by Trucking Company.  JSF ¶¶ 11–12; *id.*, Ex. 6 at 2.  The record does not reveal when Construction Company was hired or by whom.

### 2.       The Underlying Accident and Resulting Lawsuit

On November 1, 2018, Russel James, a laborer employed by Construction Company, was injured on the project's construction site.  JSF ¶ 12.  He claims that, as he was unloading doors from the back of a truck, some doors slid and fell on him.  *See id.*, Ex. 6 at 2, 4 (accident report).  The doors had been ordered by Hardware Supplier and delivered by Trucking Company.  *See id.* at 2–3; *see also* JSF ¶ 13.

 On November 7, 2019, James filed suit in New York state court.  JSF ¶ 9.  James named as defendants, among others, Owner, General Contractor, Hardware Supplier, and Trucking Company.  *See id.*, Ex. 3 ("James Compl.") at 1.  The complaint pled two causes of action.  The first, sounding in tort, claimed that "defendants' negligence, carelessness and recklessness, . . . caused [James] to be struck by falling construction material and to suffer severe and serious personal injuries."  *Id.* at 22.  The second, under the New York Labor Law, alleged that defendants "breached their statutory duty to the plaintiff by allowing the workmen . . . to work in a defectively constructed premise and location."  *Id.* at 23.  In a bill of particulars, James elaborated that defendants (and their "agents, servants and/or employees") had been negligent in failing, among other things, "to train delivery personnel," "to maintain delivery equipment," "to supervise employees," "to properly screen employees," and "to provide protection against an elevation risk."  *Id.*, Ex. 2 ("James Bill of Particulars") at 2–3.

In response to James's suit, Hardware Supplier impleaded Door Manufacturer.  In its third-party complaint, Hardware Supplier referenced its agreement with Door Manufacturer under which the latter was to deliver doors to the project.  It asserted that if James's injuries had been caused by negligence, the negligence was that of Door Manufacturer.  *See id.*, Ex. 5 ("Hardware Supplier Third-Party Compl.") at 6–7.

### 3.    The Insurance Policies

Both insurance policies at issue include Owner and General Contractor as insureds.  The first, issued by U.S. Specialty, was purchased by General Contractor.  In June 2016, when Owner hired General Contractor, General Contractor had agreed to "maintain[] insurance" throughout its tenure for both itself and Owner.  *Id.*, Ex. 8 at 4.  To meet that contractual obligation, General Contractor purchased a general liability insurance policy from U.S. Specialty, listing itself and Owner as named insureds.  *See* Dkt. 4, Ex. 4 ("U.S. Specialty Policy") at 8; *see also* JSF ¶ 36.

The second, issued by Massachusetts Bay, was purchased by Hardware Supplier.  In December 2016, when General Contractor hired Hardware Supplier, Hardware Supplier agreed to "procure and maintain in full force" general liability insurance "on a primary basis and non-contributory basis in favor of" Owner and General Contractor.  JSF, Ex. 10 ("Subcontract with Hardware Supplier") at 13, 15–16.  To meet that contractual obligation, Hardware Supplier purchased a general liability insurance policy from Massachusetts Bay.  In the Massachusetts Bay Policy, only Hardware Supplier (of the entities discussed above) is included as a named insured.  Dkt. 4, Ex. 3 ("Massachusetts Bay Policy") at 11.  General Contractor and Owner are additional insureds.  *See id.* at 84; *see also* JSF ¶¶ 22–23.[2]

---

[2] U.S. Specialty alleges that Hardware Supplier also holds, from Hanover, an "umbrella" policy, which lists General Contractor and Owner as additional insureds.  *See* Dkt. 4 ¶¶ 26–28.  Umbrella policies protect insureds "in the event of a catastrophic loss" and thus "kick[] in only

### 4.  U.S. Specialty's Tender

Two weeks before James filed his lawsuit, on October 25, 2019, U.S. Specialty tendered the defense and indemnification of Owner and General Contractor to Massachusetts Bay.  JSF, Ex. 16 at 2.  On November 22, 2019, Massachusetts Bay rejected the tender.  *See id.*, Ex. 17 at 16–17.

On May 25, 2021, U.S. Specialty retendered the defense and indemnification of Owner and General Contractor to Massachusetts Bay, and demanded reimbursement for defense costs incurred to date.  *See id.*, Ex. 18 at 4.  Massachusetts Bay did not respond to the retender.  JSF ¶ 42.

U.S. Specialty has defended Owner and General Contractor since the commencement of the state court proceedings.  It continues to incur defense costs.  JSF ¶ 43.

### B.  Procedural History

On December 10, 2021, U.S. Specialty commenced this action, naming Massachusetts Bay and Hanover as defendants.  *See* Dkt. 4.

On September 2, 2022, U.S. Specialty moved for partial summary judgment against Massachusetts Bay, *see* Dkt. 41, and filed a memorandum of law in support, *see* Dkt. 43.  On the same day, the parties filed a joint Local Rule 56.1 statement.  *See* Dkt. 42.  On September 30, 2022, Massachusetts Bay filed a memorandum of law opposing U.S. Specialty's motion.  *See* Dkt. 48 ("Def. Br.").  On November 14, 2022, U.S. Specialty filed a corrected version of its

---

after the underlying [insurance] has been exhausted."  15A COUCH ON INSURANCE § 220:32 (3d ed. 2005).  The Court does not have occasion to consider that policy on this motion, which addresses the antecedent question whether Massachusetts Bay's coverage obligation has been triggered.

opening brief, *see* Dkt. 50 ("Pl. Br."), and a reply to Massachusetts Bay's brief, *see* Dkt. 51 ("Pl. Reply Br.").

## II.     Legal Standards

### A.     Motion for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show . . . that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When the movant has properly supported its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### B.     Interpretation of Insurance Policies

"Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." *In re Ests. of Covert*, 97 N.Y.2d 68, 76 (2001).  Such policies must be read in light of their "precise terminology" and "specific context." *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 890 F.3d 74, 77 (2d Cir. 2018) (cleaned up). "An agreement is unambiguous when its words have a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Vintage, LLC v. Laws Const. Corp.*, 13 N.Y.3d 847, 849 (2009) (internal quotation marks and citation omitted).

When interpreting a contract, a court's "primary objective . . . is to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere*, 232 F.3d at 157.  "[T]he words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (internal quotation marks omitted).

"Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000); *see SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 138 (2d Cir. 2006).  "The question of 'whether the language of a contract is clear or ambiguous' is one of law, and therefore must be decided by the court." *Fed. Ins. Co. v. Am. Home Assur. Co.,* 639 F.3d 557, 568 (2d Cir. 2011) (quoting *Compagnie Financiere*, 232 F.3d at 158).

When interpreting a contract, a court's "primary objective . . . is to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere*, 232 F.3d at 157.  "[T]he words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (internal quotation marks omitted).

III.    **Discussion**

U.S. Specialty's motion here implicates two issues familiar to insurance coverage litigation: the scope of the insurer's coverage and the policy's priority relative to other policies covering the insured.  The scope issue examines the kinds of losses the policy covers.  Some policies cover one specific risk.  *See, e.g.*, 15A COUCH ON INSURANCE § 1:59 (3d ed. 2005) (discussing "sprinkler leakage insurance," which "indemnif[ies] the owner or occupant of a building . . . against all direct loss or damage by leakage from a sprinkler system installed therein as a precaution against fire").  Others reach a range of risks.  *See, e.g.*, *id.* § 1:34 (discussing "commercial general liability policies," which "protect the insurer from losses arising out of business operations").  The priority issue examines the policy's priority relative to other policies covering the insured, to wit, as between two or more policies that cover a given loss, how is the expense apportioned?  Some insurance policies are "primary," meaning the insurer is first in line and will not seek contribution from other insurers in covering losses.  *See id.* § 200:36.  Others are "excess," meaning the insurer will pay only if the underlying insurance policies have been exhausted (that is, if the loss exceeds the aggregate of the underlying policies' respective limits). *See id.* § 103:13.   Here, U.S. Specialty contends that Massachusetts Bay was obliged to defend Owner and General Contractor against James's suit, and that Massachusetts Bay's policy has priority over U.S. Specialty's.

**A.**   **Duty to Defend**

**1.**   **Applicable Legal Standards**

Under New York law, insurers have an "exceedingly broad" duty to defend their insureds in litigation against claims that might implicate covered losses. *Cont'l Cas. Co., v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 648 (1993) (quoting *Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 8 (1985)); *see also Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 326 (1974) ("While policy coverage such as the one here involved is often referred to as 'liability insurance' it is clear that it is, in fact, 'litigation insurance' as well."). Because an insurer's duty to *defend* differs in scope from its duty to *indemnify*, "an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course." *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006). "The duty to defend is liberally construed and is broader than the duty to indemnify 'in order to ensure [an] adequate . . . defense of [the] insured,' without regard to the insured's ultimate likelihood of prevailing on the merits of a claim." *Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 264 (2011) (omission and alterations in original) (quoting *General Motors Acceptance Corp. v Nationwide Ins. Co.*, 4 N.Y.3d 451, 456 (2005)).

An insurer's duty to defend its insured "arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." *Fitzpatrick v Am. Honda Motor Co.*, 78 N.Y.2d 61, 65 (1991). "If a complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 714 (2007) (cleaned up). When a "claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Cook*, 7 N.Y.3d at 137.

### 2.    Discussion

Insurance policies are, in general, comprised of standard forms drafted and promulgated by Insurance Services Office, Inc. ("ISO").  Policies typically start with a "form" that sets out default terms.  In the context of Massachusetts Bay's policy, that form is the "Commercial General Liability Coverage Form," labeled as "CG 00 01."  *See* Massachusetts Bay Policy at 98–113 (hereinafter, the "Default Contract").  The insurer and insured then typically agree upon standardized endorsements that tailor the provisions in the Default Contract to provide the desired coverage.  In general, "the words of the [Default Contract] remain in full force and effect except as altered by the words of the endorsement[s]."  *County of Columbia v. Cont'l Ins. Co.*, 83 N.Y.2d 618, 628 (1994).

Here, the Default Contract and the endorsements establish the scope of Massachusetts Bay's coverage.  The Default Contract states that Massachusetts Bay is obliged "to defend the insured against any 'suit' seeking . . . damages because of 'bodily injury' or 'property damage' . . . caused by an 'occurrence' that takes place in the 'coverage territory.'"  Massachusetts Bay Policy at 98.  An "occurrence" is defined as "an accident."  *Id.* at 112.  The "coverage territory" is "[t]he United States of America."  *Id.* at 110.  The Default Contract defines "insured" as those "designated in the Declarations" (that is, "named insureds," like Hardware Supplier, which bought the policy).  *Id.* at 106.  Two endorsements expand the definition of "insured" to include as "additional insureds" those "whom [Hardware Supplier] agreed in a written contract . . . to add [as] an additional insured," like Owner and General Contractor.  *Id.* at 82 (Contractors Endorsement); *id.* at 84 (Commercial Endorsement)

The policy's coverage is subject to several exceptions, two of which Massachusetts Bay contends apply here.  First, the endorsements provide that additional insureds (such as Owner and General Contractor) are covered only for injuries "caused, in whole or in part, by [Hardware

Supplier's] acts or omissions, or the acts or omissions of those acting on [Hardware Supplier's]

behalf." *Id.* at 82 (Contractors Endorsement); *id.* at 84 (Commercial Endorsement).[3]  Second,

the Default Contract excludes from coverage (of named and additional insureds alike) injuries

"arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . .

owned or operated by or rented or loaned to any insured." *Id.* at 101.  This provision is known as

the "Coverage Auto Exclusion."

It is undisputed that, but for these two exceptions, James's lawsuit would fall within the

scope of its policy.  The Court considers the exceptions in turn.

### i.      *The Proximate Cause Exception*

Massachusetts Bay argues that James's injuries, as pled, were not "caused, in whole or in

part" by the "acts or omissions" of Hardware Supplier or "those acting on [its] behalf," as

required by the endorsements.  Def. Br. at 3–5.  It contends that *Burlington Insurance Co. v.*

*NYC Transit Authority*, 29 N.Y.3d 313 (2017), limits its coverage to injuries proximately caused

by the named insured, Hardware Supplier.  Construing James's complaint not to "allege an act or

omission" for which Hardware Supplier can be liable, it argues that "there is no reasonable

possibility that [Hardware Supplier] was a proximate cause of [James's] alleged injuries" and

thus no reasonable possibility of coverage.  Def. Br. at 3–4 (citing *Burlington Ins.*, 29 N.Y.3d at

324).

---

[3] There are substantive differences between the two endorsements:  The first, for instance, covers only those for whom Hardware Supplier is "performing operations," Massachusetts Bay Policy at 82, while the second lacks such a limitation.  The second covers all injuries arising out of Hardware Supplier's "maintenance, operation, or use" of its equipment, *id.* at 84, whereas the first limits its coverage to injuries in particular "location[s]," *id.* at 82.  These differences do not affect the analysis here, as the operative policy language—focused on whether James's injury was "caused" by the "acts or omissions" of Hardware Supplier or those "acting on [its] behalf" —is identical in both endorsements.

Massachusetts Bay misreads—and thus misapplies—*Burlington Insurance*.  At issue there was the meaning of the contractual provision, "caused, in whole or in part."  29 N.Y.3d at 321.  The New York Court of Appeals interpreted that provision to require proximate causation, not merely but-for causation.  *See id.* at 324–25.  But it did not hold that the named insured *itself* must have proximately caused the injury.  The contractual text covers additional insureds for injuries "caused, in whole or in part" by both the named insured *and* "those acting on [the named insured's] behalf."  *Id.* at 318; Massachusetts Bay Policy at 82, 84.  *Burlington Insurance*'s proximate-cause requirement, then, can be met by acts or omissions by either the named insured or those acting on its behalf.  *See, e.g.*, *Port Auth. of N.Y. & N.J. v. Brickman Grp. Ltd., LLC*, 115 N.Y.S.3d 246, 254 (1st Dep't 2019) (rejecting claim for indemnification when "neither [the named insured] nor its subcontractor . . . bore any fault for the accident").  The decisive question here is not whether Hardware Supplier alone was a proximate cause of James's injuries, but whether it or its subcontractors were such a cause.

In resolving a claim involving a duty to defend, the Court takes a "liberal constru[ction]" of the underlying pleadings, construing James's allegations, where possible, in favor of coverage.  *Auto. Ins. Co. of Hartford*, 7 N.Y.3d at 137.  That, too, differentiates *Burlington Insurance*, which involved only a claim for indemnification.  As noted, "[t]he duty to defend is . . . broader than the duty to indemnify."  *Fieldston Prop. Owners*, 16 N.Y.3d at 264.  Although an insurer need only indemnify claims that are adjudged, ex post, to fall "within the policy's coverage," *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005), it must defend against all claims that pose, ex ante, "a reasonable possibility of coverage," *Cont'l Cas. Co.*, 80 N.Y.2d at 648; *see also Schwamb v. Fireman's Ins. Co. of Newark*, 41 N.Y.2d 947, 949 (1977) (per curiam) ("So long as the claims, even though predicated on [a] debatable or even untenable theory, may

rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend.").  As a result, insurers often must defend against claims that they are later determined not to need to indemnify. *See, e.g.*, *Live Nation Mktg., Inc. v. Greenwich Ins. Co.*, 135 N.Y.S.3d 87, 89 (1st Dep't 2020) (additional insured "not entitled to indemnification" due to trial judgment that named insured did not cause loss, but additional insured still entitled to reimbursement for defense costs given that "the allegations of the underlying complaint . . . suggested a reasonable possibility of coverage").

Here, based on the pleadings, there is at least a reasonable probability that James's injuries were "caused, in whole or in part"—that is, proximately caused—by "those acting on [Hardware Supplier's] behalf."  Massachusetts Bay Policy at 82, 84.  Thus, even "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of" Massachusetts Bay, *Johnson*, 680 F.3d at 236, the allegations at issue trigger Massachusetts Bay's duty to defend. That is so whether the issue is analyzed based on James's pleadings or Hardware Supplier's third-party complaint in the same litigation.

James's complaint and bill of particulars squarely allege fault by Hardware Supplier's subcontractors—specifically, Trucking Company.  James alleges that "[d]efendants, their agents, servants and/or employees  . . . allowed a delivery of the doors on a flatbed to be made in a negligent fashion," "fail[ed] to train delivery personnel," "fail[ed] to properly screen employees," and "fail[ed] to provide adequate safe protection."  James Bill of Particulars at 2–3. Crediting these allegations—that is, that Trucking Company made the "delivery . . . in a negligent fashion," "failed to train [its] personnel," or "fail[ed] to properly screen employees"— then acts or omissions by entities acting on Hardware Supplier's behalf likely proximately caused James's injuries.  *See, e.g.*, *Bland v. Manocherian*, 66 N.Y.2d 452, 458 (1985)

(subcontractor's failure to "provide or erect safety devices" was proximate cause of construction site injuries). And, under the logic of *Burlington Insurance*, Hardware Supplier, as "the party with the most control over the risk" through its selection and supervision of subcontractors, would reasonably be held "responsible for suffering the financial loss should it fail to prevent the loss" caused by those same subcontractors. 29 N.Y.3d at 327. That Hardware Supplier was not itself negligent would not change this result.

Massachusetts Bay responds by asserting, factually, that Trucking Company was not "acting on [Hardware Supplier's] behalf," because there was no direct contractual relationship between the two. Def. Br. at 7. Under New York law, however, a third-tier subcontractor (here, Trucking Company) does "act[] on . . . behalf" of the first-tier subcontractor (Hardware Supplier), notwithstanding the presence of an intermediate (second-tier) subcontractor (Door Manufacturer).[4] *See, e.g.*, *Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.*, No. 22 Civ. 2171 (KPF), 2023 WL 4896169, at *10 (S.D.N.Y. Aug. 1, 2023) (second-tier subcontractor "perform[s] operations" for both the first-tier subcontractor and the general contractor); *Structure Tone, Inc. v. Component Assembly Sys.*, 713 N.Y.S.2d 161, 162 (1st Dep't 2000) (employee of second-tier subcontractor performs "work . . . for [the general contractor]" when that work is part of an effort to fulfil the general contractor's agreement with the first-tier

---

[4] Were the opposite true, a contractor such as Hardware Supplier would have an incentive to minimize supervision of its subcontractors, so as to reduce the risk that those third parties would be found to have acted on its behalf. Such would undermine a core purpose of such provisions: to incent principals to supervise agents with diligence and care. *Cf.* James T. Muska Jr., *Truth and Consequences of Additional Insured Coverage*, 5 CONST. L.J. 51, 53–54 (2007) (additional insured clauses are designed to "provide[] an incentive to the [s]ubcontractor to monitor and control" its agents, because "if too many claims are made or if the claims are too expensive, the [s]ubcontractor risks losing coverage and potentially becoming uninsurable"). *See generally Burlington Ins.*, 29 N.Y.3d at 327 ("By hiring a subcontractor, a general contractor exposes itself to liability risks, including vicarious responsibility for its subcontractor's negligence; additional insured endorsements represent a way to apportion contractually these risks." (cleaned up)).

subcontractor); *Consol. Edison Co. of N.Y. v. Hartford Ins. Co.*, 610 N.Y.S.2d 219, 221 (1st Dep't 1994) ("an employee of a [second-tier] subcontractor . . . working in furtherance of [the first-tier subcontractor's] duties under [its] contract with [the general contractor] . . . perform[s] operations . . . on behalf" of both the first-tier subcontractor and general contractor). Here, Trucking Company's role on site was to fulfill Hardware Supplier's obligation to General Contractor (to timely "deliver[]" a number of doors). *See* JSF ¶ 24. On James's pleadings, it follows that Trucking Company operated on Hardware Supplier's behalf, even if not pursuant to direct instructions from Hardware Supplier, and Trucking Company's alleged negligence triggers Massachusetts Bay's duty to defend.

Hardware Supplier's third-party complaint against Door Manufacturer yields the same result. The Court considers that complaint because, although the underlying complaint is "the significant and usual touchstone for determining" an insurer's duty to defend, its allegations are not "controlling," *Fitzpatrick*, 78 N.Y.2d at 65–66, and it must be considered alongside the other state court pleadings, such as bills of particulars, stipulations, and, as relevant here, third-party complaints. *See, e.g.*, *City of New York v. Evanston Ins. Co.*, 830 N.Y.S.2d 299, 303 (2d Dep't 2007) (duty to defend attaches "if . . . the allegations in the third-party complaint give rise to the reasonable possibility of recovery under the policy" (cleaned up)). That complaint plausibly makes Door Manufacturer, as agent of Hardware Supplier, a proximate cause of James's injuries. Hardware Supplier there alleges that if James "sustained the injuries and damages alleged, such injuries and damages were caused, in whole or in part, by the acts, conduct, negligence, carelessness, or want of care" of Door Manufacturer. Hardware Supplier Third-Party Compl. at 8. Hardware Supplier also alleges that it "entered into an agreement with [Door Manufacturer] for the . . . production of doors and the delivery of same to the development project" and that

James's injury "arose out of and was connected with [Door Manufacturer's] delivery of construction material to the development project." *Id.* at 7–8.  To be sure, the duty-to-defend analysis turns "on the facts which are pleaded, not . . . conclusory assertions" of liability. *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162 (1992).  But the third-party complaint pleads such facts—in particular, that Door Manufacturer delivered the "construction material" at issue.[5] On this premise—that Door Manufacturer delivered the construction material, or supervised those who did, and was negligent in doing so—it plausibly was a proximate cause of James's injuries, triggering Massachusetts Bay's duty to defend.  *See, e.g.*, *Iveson v. Sweet Assocs. Inc.*, 610 N.Y.S.2d 382, 383 (3d Dep't 1994) (subcontractor liable if it had the "authority to supervise or control the work out of which the injury arose").

### ii. *The Coverage Auto Exception*

Massachusetts Bay alternatively argues that James's complaint and bill of particulars implicate the Coverage Auto Exclusion.  Def. Br. at 7–10.  It emphasizes that James alleges "he was injured when unloading doors" from a truck.  *Id.* at 8.  Because the Massachusetts Bay Policy "excludes coverage for the use and operation of an auto," which "includes loading and unloading," Massachusetts Bay contends that there is not a "reasonable possibility" of coverage. *Id.* at 8–10.

Massachusetts Bay, however, ignores a vital limitation on the Coverage Auto Exclusion. It excludes only those injuries "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . *owned or operated by or rented or loaned to any insured*."

---

[5] These allegations come from the named insured itself.  This case thus differs from cases where self-serving allegations in *additional-insureds'* impleaders were held insufficient to trigger a duty to defend.  *See Axis Constr. Corp. v. Travelers Indem. Co. of Am.*, No. 22 Civ. 1125 (DRH) (ARL), 2021 WL 3912562, at *7 (E.D.N.Y. Sept. 1, 2021) (citing cases).

Massachusetts Bay Policy at 101 (emphasis added).  Massachusetts Bay has not cited any pleadings that support a finding that the truck at issue was "owned or operated by or rented or loaned to any insured" under Hardware Supplier's policy.  *Cf. Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.").  The cognizable pleadings suggest otherwise—that the truck was owned and operated by Trucking Company, which was neither a named nor an additional insured in the Massachusetts Bay Policy.  *See, e.g.*, James Compl. at 13 (alleging that Trucking Company "owned" the vehicle at issue).  The Coverage Auto Exclusion thus does not relieve Massachusetts Bay of its duty to defend Owner and General Contractor.

**B.      Priority**

The parties separately part company as to how—assuming, as the Court has found, that Massachusetts Bay has a duty to defend Owner and General Contractor—defense costs are to be allocated among U.S. Specialty and Massachusetts Bay.  That turns on the proper classification of Massachusetts Bay's coverage.

**1.      Applicable Legal Standards**

Whether a policy's coverage is primary or excess with respect to a given loss is a question of contract interpretation.  In general, "[w]here the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage, . . .  priority of coverage . . . among the policies is determined by comparison of their respective 'other insurance clauses.'"  *Sport Rock Int'l v. Am. Cas. Co.*, 878 N.Y.S.2d 339, 344 (1st Dep't 2009).  These clauses "limit an insurer's liability where other insurance may cover the same loss" and are "designed to preclude payment of a disproportionate amount of a loss shared with another insurer."  15 COUCH ON INSURANCE, *supra*, § 219:1.  "An excess 'other insurance' clause

purports to make an otherwise primary policy excess insurance should another primary policy cover the loss in question." *Id.* § 219:33.

An insurance policy, like any contract, must be read as a whole. "[I]n construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement." *Richner Commc'ns, Inc. v. Tower Ins. Co. of N.Y.*, 898 N.Y.S.2d 615 (2d Dep't 2010) (quoting *County of Columbia*, 83 N.Y.2d at 628). "An insurance contract should not be read so that some provisions are rendered meaningless." *Cont'l Ins. Co.*, 83 N.Y.2d at 628.

"As with the construction of contracts generally, 'unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court.'" *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 10 N.Y.3d 170, 177 (2008) (quoting *White v. Continental Cas. Co.*, 9 N.Y.3d 264, 267 (2007)). "[A] provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." *U.S. Fire Ins. Co. v. General Reins. Corp.*, 949 F.2d 569, 572 (2d Cir. 1991); *see also Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir. 1998) (utilizing "the vantage point of the reasonable expectations and purposes of the ordinary person").

"When faced with ambiguity in an insurance policy, a reviewing court should consider extrinsic evidence submitted by the parties to assist in determining their actual intent." *McCostis v. Home Ins. Co. of Ind.*, 31 F.3d 110, 113 (2d Cir. 1994). "If extrinsic evidence does not reveal the parties' intent, it is appropriate for a court to resort to other rules of construction, including the contra-insurer rule, which states that any ambiguity in an insurance policy should be resolved against the insurer." *Travelers Prop. Cas. Co. of Am. v. Wesco Ins. Co.*, 585 F. Supp. 3d 463, 471 (S.D.N.Y. 2022); *see also, e.g., Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76,

88 n.7 (2d Cir. 2002) ("[U]nder New York law, courts should not resort to *contra proferentem* until after consideration of extrinsic evidence.").

### 2.    Discussion

Three endorsements bear upon the Massachusetts Bay Policy's priority relative to the policies of other insurers.

The first is the Contractors Endorsement.  It states in relevant part:

**A.  SECTION II—WHO IS AN INSURED** [in the Default Contract] is amended to include as an insured any person or organization for whom you are performing operations when you have agreed in a written contract, written agreement or permit that such person or organization be added as an additional insured on your policy. . . .
. . .
**E.**  Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance . . . whether primary, excess, contingent or on any other basis.  When there is other valid and collectible insurance available to the additional insured that applies on the same basis as this insurance, we will share with that other insurance by the method described in this policy.  When this insurance is excess, we have the right but not the duty to defend the insured against any claim or "suit."

This insurance applies on a primary basis if that is required by the written contract, written agreement or permit.

Massachusetts Bay Policy at 82–83.

The second is the Commercial Endorsement.  It states in relevant part:

**1.  Additional Insured by Contract, Agreement or Permit**

The following is added to **SECTION II—WHO IS AN INSURED** [in the Default Contract]:

**Additional Insured by Contract, Agreement or Permit**
**a.**  Any person or organization with whom you agreed in a written contract, written agreement or permit that such person or organization to add an additional insured on your policy is an additional insured . . . .
. . .
**b.** The insurance afforded to such additional insured described above:
. . .

**(3)** Applies on a primary basis if that is required by the written contract, written agreement or permit.

. . .

**2. Additional Insured—Primary and Non-Contributory**

The following is added to **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS**, Paragraph **4. Other insurance** [in the Default Contract]:

> **Additional Insured—Primary and Non-Contributory**
>
> If you agree in a written contract, written agreement or permit that the insurance provided to any person or organization included as an Additional Insured under **SECTION II—WHO IS AN INSURED**, is primary and non-contributory, the following applies:
>
> > If other valid and collectible insurance is available to the Additional Insured for a loss covered under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
> >
> > > **a. Primary Insurance**
> > > This insurance is primary to other insurance that is available to the Additional Insured which covers the Additional Insured as a Named Insured.  We will not seek contribution from any other insurance available to the Additional Insured except:
> > > > . . .
> > > > **(3)** when **b.** below applies.
> > >
> > > . . .
> > > **b. Excess Insurance**
> > > > **(1)**  This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:
> > > > > . . .
> > > > > **(d)** If the loss arises out of the maintenance or use of . . . "autos" . . . to the extent not subject to [the Coverage Auto Exception].

*Id.* at 84–86.  The final clause, which provides that the insurance is excess "[i]f the loss arises out of . . . use of . . . 'autos' . . . to the extent not subject to" the Coverage Auto Exception, is known as a "Priority Auto Exception."

The third is the Insured Endorsement.  It also includes a Priority Auto Exception, and states in relevant part:

> The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, Paragraph **4. Other Insurance** [in the Default Contract]:
>
>> **Additional Insured—Primary and Non-Contributory**
>> If you agree in a written contract, written agreement or permit that the insurance provided to any person or organization included as an Additional Insured under **SECTION II—WHO IS AN INSURED**, is primary and non-contributory, the following applies:
>>
>>> If other valid and collectible insurance is available to the Additional Insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
>>>
>>>> **(1)  Primary Insurance**
>>>> This insurance is primary to other insurance that is available to the Additional Insured which covers the Additional Insured as a Named Insured.  We will not seek contribution from any other insurance available to the Additional Insured except:
>>>>> . . .
>>>> **(c)**  When **(2)** below applies.
>>>>
>>>> **(2)  Excess Insurance**
>>>>> **(a)**  This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:
>>>>> . . .
>>>>>> **(iv)**  If the loss arises out of the maintenance or use of . . . "autos" . . . to the extent not subject to [the Coverage Auto Exception].

*Id.* at 81.

Section IV of the Default Contract, referenced in both the Commercial and Insured Endorsements, also includes a Priority Auto Exception.  It reads in relevant part:

**SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS**

. . .

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

    **a. Primary Insurance**

    This insurance is primary except when Paragraph **b.** below applies. . . .

    **b. Excess Insurance**

    **(1)** This insurance is excess over:

        **(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

            . . .

            **(iv)** If the loss arises out of the maintenance or use of . . . "autos" . . . to the extent not subject to [the Coverage Auto Exclusion].

*Id.* at 108–109.

The interplay of these provisions as to the policies' priority presents a challenging problem. And the parties' terse briefing on this point has left much to be desired. In its opening brief, U.S. Specialty discussed only the latter two endorsements. It declared that "[n]one of th[e] [listed] exceptions apply in this case." Pl. Br. at 8. For its part, Massachusetts Bay emphasized its contention that the Priority Auto Exception applies. Def. Br. at 12–13. In its reply, U.S. Specialty focused on the Contractors Endorsement. This, it argued, entitles Owner and General Contractor to primary coverage "if that is required by the written contract." Pl. Reply Br. at 6–7.

The Court's assessment is that, to assure a reliable resolution of this question, a new round of briefing focused on—and more carefully analyzing—the priority of the policies will be necessary. No doubt because of their dominant focus on the antecedent question of whether the Massachusetts Bay Policy covered James's claims at all, the parties dedicated scant pages to the question of priority. *See* Pl. Br. at 8–9; Def. Br. at 13–14. But how the endorsements are properly read together—the decisive question as to the allocation of defense costs among the insurers—requires rigorous parsing. U.S. Specialty's position, based on language in the

Contractors Endorsement, is that the Massachusetts Bay Policy "applies on a primary basis," as such "is required by [Hardware Supplier's] written contract" with General Contractor. *See* Pl. Reply Br. at 7. Massachusetts Bay's position, based on the Priority Auto Exception, is that its coverage is excess. *See* Def. Br. at 12–13.

The Court will give the parties a short window to attempt to resolve this dispute before renewed briefing. Should that fail, either or both parties may file a renewed motion for summary judgment, limited to the issue of priority of coverage. The parties' briefs on such motion(s) should carefully address, *inter alia*, the following questions:

- Is the Massachusetts Bay Policy clear on this question, or textually ambiguous? If the latter, what extrinsic evidence exists to resolve the ambiguity?

- What weight should be given to the fact that Hardware Supplier purchased the Massachusetts Bay Policy pursuant to an agreement with General Contractor under which it was to "procure and maintain in full force" general liability insurance "on a *primary basis* and non-contributory basis in favor of" Owner and General Contractor? *See* Subcontract with Hardware Supplier at 13, 15–16 (emphasis added). The Court would benefit from a review of precedents in which a policy's endorsements are in conflict with the commercial agreement that required the named insured to purchase the policy.[6]

---

[6] In its reply, U.S. Specialty relied on Judge Caproni's decision in *Travelers Property Casualty Co. v. Wesco Insurance Co.*, 585 F. Supp. 3d 463 (S.D.N.Y. 2022). *See* Pl. Reply Br. at 7–8. Although potentially germane depending on the construction of the above endorsements, *Wesco* does not address the situation in which there is a square conflict between an agreement and an ensuing endorsement. Rather, as Judge Caproni emphasized, the text of the endorsements at issue could not be reconciled. One stated that the policy's coverage shall be "excess over any of the other insurance that is available to the insured when the insured is added as an additional insured under any other policy." *Id.* at 472. Another stated that its "coverage . . . shall be excess . . . unless a written contract . . . specifically requires that this insurance apply on a primary or

- Under New York law, "other insurance" clauses come into play only if (1) "the same risk" is "covered by two or more policies," and (2) those policies were "each . . . sold to provide the same level of coverage."  *E.g.*, *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 327 (S.D.N.Y. 2020).  Here, is the same "risk" covered by the two policies?  Were the policies both "sold to provide the same level of coverage"?  What role should be given to the "purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it"?  *See State Farm Fire & Cas. Co. v. LiMauro*, 65 N.Y.2d 369, 374 (1985).

- Assuming the Priority Auto Exception qualifies Massachusetts Bay's coverage to additional insureds, does James's injury trigger that exception?[7]  How does the fact that both parties' policies contain a Priority Auto Exception affect the analysis?  *Compare* Massachusetts Bay Policy at 108–109, *with* U.S. Specialty Policy at 38.

- Because U.S. Specialty first invoked the Contractors Endorsement in its reply, *see* Pl. Reply Br. at 6–7, Massachusetts Bay has yet to offer its construction of that provision.  What is the import of the portion of that endorsement stating that "*[a]ny* coverage provided by this endorsement to an additional insured shall be

---

non-contributory basis."  *Id.* at 467.  The contract "provide[d] no clear relationship or hierarchy between [its] two conflicting provisions; it [was] equally plausible that one controls over the other."  *Id.* at 472.

[7] The Court, however, is unpersuaded by U.S. Specialty's argument that "'use' of an auto under the [Massachusetts Bay] Policy includes operation but does not include 'loading or unloading.'"  Pl. Reply Br. at 9.  Although the New York Endorsement deletes the definition of "loading or unloading," *see* Massachusetts Bay Policy at 118, it does not purport to omit "loading or unloading" from the scope of "[u]se" of an auto, *see id.* at 101.

excess over any other valid and collectible insurance"? *See* Massachusetts Bay

Policy at 82–83 (emphasis added).

The briefing to date has not grappled with these questions, such that the Court, at present, cannot reliably resolve the priority between the competing policies. Neither side, including movant U.S. Specialty, thus established that it is "entitled to judgment as a matter of law." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). The Court denies summary judgment on this point, without prejudice to a further motion, from either party, on this issue.

## CONCLUSION

For the foregoing reasons, the Court grants in part U.S. Specialty's partial motion for summary judgment, to the extent that it seeks a declaration that Massachusetts Bay is obliged to defend in the state court action, but denies without prejudice this motion to the extent it seeks a declaration as to the priority of the policies of U.S. Specialty and Massachusetts Bay. The Court directs counsel promptly to meet and confer to discuss resolution of this case. Should the parties fail to resolve the case by Friday, October 13, 2023, they are to submit a joint letter so stating, and proposing a schedule for a new round of summary judgment briefing limited to the issue of the priority of coverage of the insurance policies. The proposed schedule should anticipate the completion of briefing by the end of November.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: September 21, 2023
        New York, New York